IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,760






 CESAR DE LEON, Relator


v.



 THE HONORABLE LUIS AGUILAR, JUDGE 120TH 
DISTRICT COURT OF EL PASO COUNTY, Respondent




 ORIGINAL MANDAMUS PROCEEDING


 FROM EL PASO COUNTY




 Hervey, J., delivered the opinion of the Court in which Meyers, Price,
Womack, Johnson, Keasler, Holcomb, and Cochran, JJ., joined. Keller, PJ.,
dissented.


OPINION 



 The issue in this mandamus proceeding is whether the law provides an immediate remedy to enforce
a right to recuse a biased trial judge. We hold that it does.

 This is an original mandamus proceeding filed by Eduardo Chavez (Chavez) and Cesar De Leon
(De Leon). They seek mandamus relief from this Court to compel respondent either to grant their recusal
motions or to refer their recusal motions for another judge to decide. De Leon has criminal charges
pending against him in respondent's court. After the filing of this mandamus proceeding, Chavez pled guilty
to the criminal charges that were pending against him in respondent's court, so we dismiss as moot his
mandamus claim. We will conditionally grant mandamus relief to De Leon.

 The record reflects that De Leon's lawyers (the lawyers) represent another criminal defendant
named David Estrada (Estrada) who also had criminal charges pending against him in respondent's court. 
Estrada filed a motion in respondent's court to recuse respondent based on his bias against the lawyers. 
Respondent referred the Estrada recusal motion to another judge who granted the motion after a hearing. 
Respondent was present and represented by counsel at this hearing.

 Soon after this, the lawyers timely filed in respondent's court an identical motion to recuse
respondent in De Leon's case. Respondent, however, declined to recuse himself or to refer the motion
for another judge to decide. Instead, he ruled that De Leon's recusal motion did not allege proper grounds
for recusal that would have triggered respondent's duty to recuse himself or to refer the motion for another
judge to decide. (1)

 De Leon sought mandamus relief in the El Paso Court of Appeals. The El Paso Court denied
mandamus relief in a 2-1 published decision with each judge filing an opinion. See In re Chavez, 
S.W.3d (Tex.App.-El Paso, No. 08-03-00277-CR, delivered August 12, 2003). The lead opinion
denied mandamus relief based on this Court's decision in Woodard v. Eighth Court of Appeals, 991
S.W.2d 795 (Tex.Cr.App. 1998). See Chavez, slip op. at 6-14, 14 (trial judge's "abusive
noncompliance" with recusal rule provides no basis for granting mandamus relief). The concurring and
dissenting opinions urged this Court to revisit Woodard. See Chavez, slip op. at 14-15 (Barajas, C.J.,
concurring) and at 15-16 (Larsen, J., dissenting). The dissenting opinion also claimed that the facts of this
case are distinguishable from Woodard which the dissenting opinion claimed "is simply wrong." See
Chavez, slip op. at 15-16 (Larsen, J., dissenting).

 The origins of this case go back about two years when one of the lawyers insinuated that
respondent was ambulance chasing in a personal injury case. Without expressing any opinion as to the
merits of this imputation, we set out verbatim the facts from the opinion of the Court of Appeals.

 [The lawyers'] complaints about [respondent's] alleged personal bias arise from events
which occurred in April 2002, during which [respondent] was a candidate for judicial
office for the 120th Judicial District Court. At that time, [the lawyers, Abraham and Smith],
were attorneys representing their client Javier Favela in a criminal matter then pending in
the United States District Court in El Paso, Texas. During the course of that
representation, Mr. Favela was critically injured in a traffic accident during an inmate
transfer movement by the U.S. Marshal Service on April 10, 2002. The marshals
immediately contacted [the lawyers] and informed them of the accident and requested that
they notify the Favela family. In addition, the U.S. Marshal Service requested that [the
lawyers] serve as liaison between the Favela family, medical personnel, and the Marshal
Service since Mr. Favela was still considered a prisoner in federal custody who could not
have physical contact with family members. [Smith] went to Thomason Hospital, where she
was eventually met by Favela family members.


 The next day, April 11, 2002, numerous individuals approached the Favela family at
Thomason Hospital while [Smith] was present. These individuals included attorneys
attempting to solicit representation of Mr. Favela in any personal injury litigation against
those agencies involved in the traffic accident. [Respondent], then a judicial candidate, was
among the attorneys present at Thomason Hospital. The Favela family members advised
those individuals in the presence of U.S. Marshals, that [the lawyers] would be handling
the representation of Javier Favela and his family. [The lawyers] continued to represent
the Favela family interests until April, 13, 2002, two days later, when the Favela family
informed [the lawyers] that they had retained the services of [respondent]. The conduct
of [respondent] at the hospital, and days thereafter, is the foundation for the subsequent
motions to recuse.


 In each case identical recusal motions allege that prior to being hired by the Favelas,
[respondent] appeared at Thomason Hospital, supposedly on behalf of the Favela's church
community. [The lawyers] contended that although [respondent] knew that the Favelas had
secured [the lawyers] as their counsel and had seen [Smith] at the hospital, his true
purpose was to procure legal employment and [sic] the Favela's personal injury case. On
April 15, 2002, [respondent] formally informed [Smith] that he had been retained by all
of Mr. Favela's heirs to represent their interests regarding any personal injury claim. On
April 16, 2002, [Smith] sent a letter complaining about [respondent's] solicitation of
business. [Smith] stated that [respondent] was certainly aware that she represented Mr.
Favela in his federal criminal proceedings and was the individual first contacted by the U.S.
Marshal Service. [Smith] further stated that she was present at Thomason Hospital with
Mr. Favela from Wednesday, April 10, 2002, until the early hours of the following
morning, Thursday, April 11, 2002, from approximately 10 a.m. to 9 p.m. on that same
date, and again on Friday, April 12, 2002, from approximately 9:30 a.m. to 12:30 p.m.
and from 3:15 p.m. to 5 p.m. During this period of time, it was [Smith's] understanding,
based on her communication with the Favela family that she would be handling any
personal injury claim. With respect to the solicitation, [Smith] wrote,


 I have always upheld an impeccable ethical reputation and I did not, given
the very grave nature of Mr. Favela's injuries and the family's anguish,
believe it appropriate or considerate to require the Favelas to sign a formal
contract with me at that time. Their word was sufficient for me. I could
not have anticipated that an individual newly elected for a judicial position
and who I am certain embodies the utmost respect for legal ethics would
appear at the hospital as a representative of the Favela's church
community-and enter into a legal discussion with them when it was well-known by you that I represented them.


 After receipt of [Smith's] letter, [respondent] orally communicated with [Abraham]
concerning the Favela situation. During their conversation, [respondent] allegedly referred
to and described [Smith] in a derogatory and unkind manner. [Smith] and [respondent]
had no further communication or contact until March 2003 at which time [Smith] appeared
on behalf of [Abraham] as counsel for their client [in the Estrada case].


 [The lawyers'] recusal motions also detail [respondent's] actions as presiding judge in [the
Estrada case] during March and April 2003, prior to his recusal, which [the lawyers] assert
evidenced his deep-rooted bias against [the lawyers]. In the [Estrada] case, [respondent]
scheduled that case for a trial date which [Smith] had previously and formally notified the
court would conflict with a specially scheduled jury trial in the State of Texas v. Trent
Eigner in the 41st Impact Court of El Paso County. At the April 2, 2003, hearing on the
motion to continue filed in [the Estrada case] based on this scheduling conflict, counsel Ray
Velarde appeared before [respondent] on behalf of [the lawyers] to urge [their] motion for
continuance of that hearing filed April 1, 2003. Respondent denied the motion to continue.


 In March 2003, [Abraham] with counsel Ray Velarde were scheduled for a status
conference in an unrelated civil forfeiture case before [respondent]. When associate
[Smith] failed to appear precisely at 9:30 a.m., [respondent] sua sponte granted a post
answer default judgment in favor of the State of Texas. [Smith] admittedly tardy to the
conference because she was still appearing before the Hon. David Briones, a federal
district judge for the Western District of Texas, El Paso Division in three cases. Prior to
the status conference, the State and claimants had been involved in settlement negotiations,
which they continued after [respondent's] action. However, upon information and belief,
counsel understood that [respondent] would not accept their settlement agreement or an
agreed judgment. On April 4, 2003, [the lawyers] and Mr. Velarde filed a motion for new
trial in the civil case, and attached to their April 11 amended motion a letter from Judge
Briones to [respondent], confirming that [Smith] was in his court for mandatory docket
call, which lasted longer than anticipated. Though the State did not oppose the motion for
new trial, [respondent] denied the motion at the April 25 hearing on the matter.[ (2)] 

 

 This Court will grant mandamus relief if De Leon can demonstrate that the act sought to be
compelled is purely "ministerial" and that De Leon has no adequate legal remedy. See State ex rel.
Rosenthal v. Poe, 98 S.W.3d 194, 198 (Tex.Cr.App. 2003) (orig. proceeding). The procedures for
recusal of judges set out in Rule 18a of the Texas Rules of Civil Procedure apply in criminal cases. See
Tex.R.Civ.Proc., 18a; Arnold v. State, 853 S.W.2d 543, 544 (Tex.Cr.App. 1993).

 Respondent argues that he did not violate Rule 18a because he merely exercised his power to
determine that De Leon's recusal motion did not present a "prima facie case justifying recusal." 
Respondent, therefore, claims that he had no duty to recuse himself or to refer the recusal motion for
another judge to decide. The Court of Appeals stated that the law has developed in criminal cases "that
a criminal trial judge may make an initial determination as to whether the recusal motion conforms with Rule
18a(a)" even though case law "in civil cases is starkly different." See Chavez, slip op. at 8-9; see also
McClenan v. State, 661 S.W.2d 108, 110 (Tex.Cr.App. 1983) (in order for Rule 18a to come into play,
motion must be prima facie adequate and allege proper grounds upon which a recusal is sought).

 When a recusal motion is timely filed, Rule 18a leaves a trial judge with no discretion-the trial judge
must either recuse himself or refer the motion for another judge to decide. See Rule 18a(c). (3) Any criminal
cases to the contrary such as McClenan are overruled. Rule 18a does not contemplate that a trial judge
whose impartiality is questioned can nevertheless determine whether the allegations of bias against him state
sufficient grounds for recusal.

 We further decide that, under the unusual circumstances of this case, respondent's bias in the De
Leon case has been established as a matter of law. We base this decision on the record in this proceeding
and on the prior judicial ruling on the Estrada recusal motion after respondent had the opportunity to be
heard through counsel on this motion. See Chavez, slip op. at 2-6, 13 (setting out the evidence of
respondent's bias against the lawyers). We note that, according to the Court of Appeals, "the parties in
effect conceded [at oral argument] that any alleged bias [from the Estrada case] would have persisted [in
the De Leon case] in such a short time frame." See Chavez, slip op. at 13. We further note that, by his
refusal to comply with Rule 18a, respondent is responsible for having deprived De Leon and himself of
an opportunity to litigate the issue of respondent's bias in the De Leon case. See Chavez, slip op. at 13
(respondent has effectively limited De Leon's ability to obtain a fair hearing and his ability to effectively
utilize the appellate process based on a complete evidentiary record). Respondent, therefore, violated a
"ministerial" duty by failing to recuse himself. See Rosenthal, 98 S.W.3d at 198 ("ministerial act"
requirement has been described to mean that the relief sought must be "clear and indisputable" such that
its merits are "beyond dispute" with "nothing left to the exercise of discretion or judgment").

 The issue now is whether De Leon has an adequate legal remedy. It bears repeating that
mandamus is an extraordinary remedy and that De Leon cannot satisfy the inadequate legal remedy
requirement merely by showing that he will be greatly inconvenienced by getting the recusal question
decided through the normal appellate process no matter how much his situation might tug at judicial
heartstrings. See In re Union Pacific Resources Co., 969 S.W.2d 427, 428-429 (Tex. 1998); Walker
v. Packer, 827 S.W.2d 833, 842 (Tex. 1992) (an appellate remedy is not inadequate merely because it
may involve more expense or delay than obtaining an extraordinary writ); see also State ex rel. Millsap
v. Lozano, 692 S.W.2d 470, 481 (Tex.Cr.App. 1985) (state entitled to mandamus relief on a recusal issue
under Rule 18a because state had no right to appeal).

 Deciding that respondent's bias in the De Leon case has been established as a matter of law
distinguishes this case from cases such as Woodard and McClenan. Though both of these cases involved
a trial judge's alleged failure to comply with Rule 18a, neither of them involved a situation where the trial
judge's bias was established as a matter of law. See Woodard, 991 S.W.2d at 797 (trial judge allegedly
failed to comply with Rule 18a by not referring the defendant's fourth recusal motion for another judge to
decide); McClenan, 661 S.W.2d at 110-11 (trial judge erred by failing to refer defendant's recusal motion
for another judge to decide). Moreover, McClenan (which we have overruled on other grounds earlier
in this opinion) demonstrates that a trial judge's failure to comply with Rule 18a can be harmless where the
record demonstrates that the trial judge was not biased. See McClenan, 661 S.W.2d at 111. We,
therefore, reaffirm the general rule applied in Woodard that courts "should not grant mandamus relief to
the complaining party on a recusal motion under [Rule 18a] because the party has an adequate remedy at
law by way of an appeal from the final judgment." See Woodard, 991 S.W.2d at 796-97. (4)

 This rule, however, does not apply here because respondent's bias has been established as a matter
of law. Any trial resulting in an appeal would be a waste of judicial resources because this is a structural
error not subject to a harm analysis. See Neder v. United States, 119 S.Ct. 1827, 1833 (1999) (biased
trial judge is structural error not subject to harm analysis). Under these circumstances, mandamus provides
a remedy of respondent's immediate recusal. See Walker, 827 S.W.2d at 843 (party seeking mandamus
relief "must establish the effective denial of a reasonable opportunity to develop the merits of his or her
case, so that the trial would be a waste of judicial resources"); Union Pacific Resources Co., 969 S.W.2d
at 429 (Hecht, J., concurring) (mandamus may be appropriate where trial judge's ruling is almost certain
to require a reversal of the final judgment on appeal); (5) compare Buntion v. Harmon, 827 S.W.2d 945,
948 (Tex.Cr.App. 1992) (appeal of trial court's arbitrary replacement of appointed counsel to indigent
defendant was inadequate legal remedy because trial judge's actions would "most likely result in a new
trial") quoting Stearnes v. Clinton, 780 S.W.2d 216, 225-26 (Tex.Cr.App. 1989). 

 As is our custom, we withhold issuance of the writ to accord respondent an opportunity to make
that unnecessary. See Rosenthal, 98 S.W.3d at 203.


 Hervey, J.



Delivered: January 21, 2004

Publish
1. Respondent's order "denying" De Leon's recusal motion is not part of the mandamus record. 
Respondent's order "quashing" Chavez' recusal motion is part of the mandamus record and it states:


 The Motion to Recuse is facially insufficient and is not prima facie adequated [sic]. 
Therefore, the mandatory referral provision of Rule 18a is not triggered. In a criminal case
such as the one at bar, an obvious prerequisite is that the Motion to Recuse must be prima
facie adequate. It must allege proper grounds upon which a recusal could be sought in the
first place. Movant's Motion to Recuse does not even allege proper grounds for recusal. 
Therefore, a proper Motion to Recuse is not before the trial judge and this case will not
be referred to the presiding judge of the administrative judicial district to have another
judge hear the motion.
2. Chavez, slip op. at 2-5.
3. A timely filed recusal motion triggers the trial judge's duty to recuse or to refer. The trial judge has
no such duty when a recusal motion is not timely filed. See Arnold, 853 S.W.2d at 544-45.
4. We note that the Texas Supreme Court has granted mandamus relief where a trial judge did not
comply with Rule 18a in the absence of a determination that the trial judge was biased. See McLeod v.
Harris, 582 S.W.2d 772, 773-75 (Tex. 1979). The Supreme Court did so, however, without any
discussion of whether the moving party had an adequate legal remedy by way of an appeal. See id. We,
therefore, decline to follow McLeod. 
5. On the other hand, an appeal from the failure of a trial judge (whose bias has not been established)
to comply with Rule 18a or from the denial of a recusal motion that is referred for another judge to decide
will not almost certainly result in a reversal of the judgment. See, e.g., McClennan, 661 S.W.2d at 110-11.